# Exhibit 4

1              UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF NEW JERSEY
3

   COMMODITY FUTURES TRADING    )
4  COMMISSION,                  )
                                )
5           Plaintiff,           )
                                ) Case No.
6      vs.                       ) 3:23-cv-11808
                                )
7  TRADERS GLOBAL GROUP INC.,   )
   et al.,                      )
8                                )
            Defendants.          )
9  --------------------------   )
10
11
12                    Thursday, November 2, 2023
13                    9:14 a.m.
14
15
16           Remote Zoom Videotaped Deposition of
17  MURTUZA KAZMI, held before Stacey L. Daywalt, a
18  Court Reporter and Notary Public of the
19  District of Columbia.
20
21
22
23
24
25  Job No. CS6291492

```
 1   opposite side of the trade when being executed.
 2              In the virtual environment that we
 3   had with, you know, proper market execution,
 4   filling at market prices, the actual trade did
 5   not go out of that virtual or hypothetical
 6   environment; hence, it did not require the
 7   other side or a counterparty.
 8              And on the second note, there were
 9   no deposits of these customers, so we are not
10   counterparty to customers.
11        Q.    What I'm asking, Mr. Kazmi, is:  Why
12   do you think that?
13              And let me take it a little bit at a
14   time.
15              MR. BURDEN:  And Counsel, if there's
16   a need for an attorney-client privilege
17   objection here, you know, you can make it.
18        Q.    Mr. Kazmi, did anybody ever tell you
19   that the B book traders were not
20   counterparties?
21        A.    The B book traders were not
22   counterparties.
23              It came up in our discussion, but I
24   was not told that.
25        Q.    What do you mean it came up in your
```

```
 1   discussion?
 2         A.    It came up within our discussion
 3   with my counsels -- counselors.
 4         Q.    All right.  And what are the names
 5   of those counselors?
 6         A.    I would say Kurt and -- yeah, Kurt
 7   would be the major one.
 8         Q.    Wait.
 9               Kurt Wolfe?
10         A.    Correct.
11               MR. BURDEN:  Kurt, are you guys
12   going to object here or?
13               MR. WOLFE:  I don't know that -- the
14   fact that we had a conversation, I don't
15   believe is privileged, but we're treading very
16   close to the line.
17   BY MR. BURDEN:
18         Q.    Okay.  Well, I'll tell you what.
19               This conversation that you had with
20   Mr. Wolfe, when did that occur, Mr. Kazmi?
21         A.    In the past couple of weeks.
22         Q.    Okay.  Well, what I want to try to
23   get at is before then.
24               So Mr. Kazmi, before the entry of
25   the SRO in this case --
```

```
 1         A.    Mm-hmm.
 2         Q.    -- did you have any conversations
 3   with anybody about, whether customers of
 4   Traders Global or counterparties with Traders
 5   Global, on the B book?
 6               MR. PERRY:  Can I just interject
 7   just to make an offer or suggestion.
 8               You know, Ashley, perhaps you could
 9   just reformulate the question as anyone who is
10   not his attorney.
11               MR. BURDEN:  Yeah, so here's the
12   thing, Avi, I do want him to tell me if an
13   attorney told him that.
14               MR. PERRY:  Okay.  Well, then we
15   object on -- then we object on privileged
16   grounds, and I think it's improper to ask that
17   question.
18               MR. BURDEN:  It is definitely not
19   improper to ask this question.
20               MR. PERRY:  Ashley, I think you are
21   treading very close to an ethical issue here.
22               If you're asking --
23               (Simultaneous crosstalk.)
24               MR. PERRY:  I do.  I do.
25               And I think you're asking him
```

```
 1   improperly what he -- what he may have
 2   discussed.  I think --
 3                MR. BURDEN:  Well, I haven't --
 4   well, I'll tell you what, Avi.  I'm going to
 5   ask the question, and I mean for the question
 6   to encompass privileged conversation.
 7                If counsel would like to invoke the
 8   privilege or confer with their client --
 9                MR. PERRY:  Ashley, as a government
10   attorney, you have a duty not to ask a -- not
11   to ask a question that you believe will elicit
12   privileged information.
13                MR. BURDEN:  That is -- that is not
14   right, Avi.
15                If that was your experience, then
16   I'll let you have it.  But my own experience is
17   that such things are entirely permissible.
18                So I'm going to ask the question,
19   and if you'd like to object, you should.
20                MR. PERRY:  But before we even do
21   that, I'm going to instruct my client that if
22   the answer involves advice he was given or
23   discussions that he had with an attorney
24   representing him or his companies, he should
25   not answer or we can take a break.
```

```
 1              MR. BURDEN:  Wait.  Well, I tell you
 2    what.  I didn't totally get that, but we'll get
 3    there.
 4              How about this?
 5              MR. PERRY:  I suspect you did.
 6              MR. BURDEN:  What?
 7              Never mind.
 8              MR. PERRY:  I think this line of
 9    questioning is improper and could easily be
10    fixed by simply not treading into ground that
11    you believe or may believe to be privileged
12    information.
13    BY MR. BURDEN:
14         Q.   Mr. Kazmi, prior to the entry of the
15    SRO in this case, did you have discussions with
16    any attorneys about My Forex Funds?
17         A.   Yes, I did.
18         Q.   All right.  And with whom?
19         A.   Gowlings.
20         Q.   All right.  Anybody else?
21         A.   So we worked with CONSOB, the
22    Italian regulator, through Gowling as well.
23              They refer to me -- they referred an
24    Italian law firm to me.
25              So I don't have their name right
```

```
 1    now, but we also, you know, talked to them.
 2              And there is a law firm in Australia
 3    that we talked to about it as well.
 4        Q.    Do you recall the name of the firm,
 5    Mr. Kazmi?
 6        A.    I do not.
 7        Q.    Well, all right.  Now, Mr. Kazmi,
 8    I'm going to ask you a question that calls for
 9    attorney-client privileged response, and your
10    counsel can object or you can confer or you
11    could waive the privilege if you wish to do
12    that, as people sometimes do.
13              Mr. Kazmi, did you discuss My Forex
14    Funds' counterparty status with any of these
15    attorneys that you described?
16              MR. PERRY:  Okay.  Objection.
17              I'm going to instruct my client not
18    to answer that question on the basis of
19    privilege.
20              And I'm going to admonish counsel
21    that I believe the questioning is improper.
22              MR. BURDEN:  I'm afraid we'll just
23    have to agree to disagree, Avi.
24              MR. PERRY:  For now, that is
25    correct.
```