# KING & SPALDING

King & Spalding LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036-4003
Tel:  (212) 556-2100
Fax:  (212) 556-2222
www.kslaw.com

Craig Carpenito
Direct Dial: (212) 556-2142
CCarpenito@kslaw.com

May 31, 2024

**VIA ECF**
Honorable Jose L. Linares (Ret.)
Special Master
McCarter & English LLP
100 Mulberry Street
Four Gateway Center
Newark, New Jersey 07102

> Re:    ***CFTC v. Traders Global Group, Inc.,*** **Case No. 1:23-cv-11808-ESK-EAP**

Dear Judge Linares,

We write jointly on behalf of Defendants and the CFTC to provide a status report on the Parties' ongoing discussions regarding the scope of Defendants' discovery requests related to issues in the pending Motion for Sanction ("Motion") (ECF No. 172) and related issues.

We also identify several issues that the Parties have been unable to resolve and, pursuant to Your Honor's Order dated May 22, 2024 (ECF No. 201), briefly set forth the Parties' respective positions on those issues. In Section B, below, Defendants provide a summary statement of their position on the unresolved discovery issues, and further state that they will be prepared to address these issues during the upcoming status conference on May 31, 2024, or to brief the issues if Your Honor wishes. The CFTC briefly responds to Defendants' statements, and respectfully requests that Your Honor set a briefing schedule on all remaining disputed issues as contemplated during the May 17, 2024 status conference.

May 31, 2024
Page 2

A.     **Status Report**

Following the status conference before Your Honor on May 17, 2024, the Parties met and conferred on May 20, May 22, May 24, and May 30, 2024, with respect to the scope of Defendants' discovery requests, the CFTC's privilege log, and related issues (the "Discovery Conferences").

During the Discovery Conferences, the Parties discussed the search parameters the CFTC utilized in identifying materials that may be responsive to Defendants' requests for production (ECF No. 192-2) (the "Requests"), and the Parties confirmed their agreement as to the CFTC's priority of custodians and preliminary search parameters, and also discussed, but did not agree on, the appropriate date range for the review. Defendants reserved their rights to request that the CFTC later expand the search to capture additional materials that may be responsive to the Requests (*e.g.*, to include additional document custodians or expand the date range).

Although the CFTC has made substantial progress, the CFTC's ongoing review of potentially relevant documents and communications will not be complete before May 31. Within the scope of discovery authorized by Your Honor, the CFTC will be producing non-privileged materials (to the extent such materials exist) and privilege logs on a rolling basis until that process is complete.

Specifically, on or before May 30, and to the extent that any responsive materials exist, the CFTC will provide a privilege log of communications with the Ontario Securities Commission ("OSC") and relevant CFTC custodians for the period of May 23, 2023 through December 1, 2023 that are responsive to Defendants' Request Nos. 1–5, 7, 9, 11, and 13 (*See* ECF No. 199 at 2), as well as materials identified in, or related to, the CFTC's response to Defendants' Interrogatory No. 7 (*See* ECF No. 192–3.)

The CFTC will supplement its privilege log on an ongoing basis, and will continue to engage with Defendants as to the priority of review. On or before June 5, 2024, the CFTC will provide a privilege log of internal CFTC communications, based on Defendants' priority custodians, for the time-period of May 23, 2023 through December 1, 2023, that are responsive to Defendants' Request Nos. 1-5, 7, 9-11, and 13 (to the extent that any responsive documents exist). On or before June 19, 2024, the CFTC will supplement its privilege log as to any additional communications (and, as applicable, documents) responsive to the aforementioned requests, as well as communications responsive to Defendants' Request Nos. 6, 14, and 15 for the period of May 23, 2023 through December 1, 2023. This should largely complete the CFTC's efforts to review potentially relevant materials, evaluate applicable privileges, and prepare a privilege log as to materials that are within the scope of discovery authorized by Your Honor. However, as discussed below, the Parties continue to dispute the scope of authorized discovery and, should Your Honor order discovery on the additional subjects and/or expanded time frame as requested by Defendants, the CFTC will need additional time. (*See* ECF Nos. 188, 192, 194, 199.)[1]

Prior to the filing of Defendants' Motion, the CFTC had produced non-privileged documents that are responsive to Defendants' discovery requests. To the extent additional non-

---

[1]   The CFTC has proposed, but Defendants have not agreed to, the deadlines set forth in this paragraph.

May 31, 2024
Page 3

privileged documents are identified in connection with the CFTC's ongoing document review, those materials will promptly be produced.

The Parties are engaged in discussions regarding a potential limited privilege waiver over certain documents and information that the CFTC asserts are protected by the attorney-client privilege, work product doctrine, deliberative process privilege, government investigative privilege, or any other principals of non-disclosure, privilege, protection or immunity applicable under governing law and/or confidential pursuant to the IOSCO-MMOU to which the CFTC and OSC are both signatories. That agreement would be in the form of a Proposed Protective Order under Federal Rule of Evidence 502(d) ("Proposed Protective Order"). While discussions as to the potential waiver are ongoing, as currently contemplated by the Parties, the Proposed Protective Order would include, for the period of May 23, 2023 to December 1, 2023, certain materials responsive to Defendants' Request Nos. 1-7 and 10 (ECF No. 192–2), as well as a December 14, 2023 document identified in the CFTC's Response to Defendants' Interrogatories. Undersigned counsel for the CFTC has prepared and will promptly circulate a draft Proposed Protective Order for Defense counsel's review and comment. Once approved by the Defendants and counsel, the CFTC will need to obtain approval to waive privilege even on a limited basis from the Commission itself and, for inter-agency communications, the OSC. The Division of Enforcement will take all reasonable steps to seek Commission approval on an expedited basis, and will update defense counsel (and if requested Your Honor) as to the status of that the Commission's consideration, as well as the OSC's approval process, on or before June 17. Defendants reserve their rights to seek additional discovery as set forth below.

## B.   Issues that Remain in Dispute

### 1.   Testimony of Elizabeth Streit, Chief Trial Attorney, CFTC

#### a.   Statement of the Issue

Defendants maintain that Ms. Streit should appear and testify at the evidentiary hearing. The CFTC will not agree to make Ms. Streit available unless ordered to do so.

#### b.   Defendants' Position

Ms. Streit is a necessary witness. As the assigned Chief Trial Attorney, Ms. Streit was the supervising attorney in charge of the CFTC's lawsuit against Defendants from its inception until she was removed from the case in February after Defendants served their notice of sanctions motion. Ms. Streit is aware of the substance of, and factual allegations in, the CFTC's pleadings (including the application for an *ex parte* Statutory Restraining Order and Complaint); she is familiar with averments in the Edelstein Declaration and concerns about the accuracy of the declaration; and she is familiar with the decision about whether and when to disclose the true nature of the $31.55 million wire transfers. For those reasons, perhaps, the CFTC of its own accord identified Ms. Streit as one of the three priority document custodians whose records the CFTC is willing to review and produce at this stage, subject to the 502(d) Agreement.

The CFTC's responses to Defendants interrogatories further support Defendants' position. Ms. Streit plainly has relevant knowledge. According to the CFTC's interrogatory responses, Ms. Streit recalls "becoming aware that the transfers were tax payments on or about September 26,

May 31, 2024
Page 4

2023" (Interrogatory Responses at 8); in November 2023, Ms. Streit had a series of conversations with Ashley Burden about the August 17, 2023, OSC email that revealed the true nature of the $31.55 million wire transfers (the "OSC Email") (Interrogatory Responses at 13); Ms. Streit met separately CFTC Division of Enforcement Deputy Director Robert Howell and Deputy Regional Counsel Scott Williamson to discuss the OSC Email (Interrogatory Responses at 13); Ms. Streit also met with "Mr. McGinley, Mr. Howell, Mr. Williamson, Ms. Lowe, Ms. Aisenbrey, Ms. Streit, and Special Counsel James Wheaton on the subject of the [OSC Email]" (Interrogatory Responses at 13).

Defendants respectfully submit that they should be given the opportunity to examine Ms. Streit with respect to her knowledge of relevant events, her previous role as Chief Trial Attorney and supervisor in this litigation, any of her documents or communications that are produced by the CFTC, and the information disclosed in the CFTC's interrogatory responses.

### c.    CFTC's Position

Defendants' Motion asserts that sanctions are warranted due to the CFTC's misidentification of two transfers in a summary chart in a declaration submitted by a CFTC Investigator, Mr. Edelstein. It is undisputed that the now-corrected Declaration mistakenly identified combined transfers totaling CAD $31.5 million out of more than USD $300 million in funds the CFTC alleges Defendants fraudulently obtained from victims. The chart in Mr. Edelstein's declaration identified those transfers as being sent to "an unidentified Kazmi account," when in fact Defendants transferred those funds to pay Canadian taxes. Rejecting the CFTC's explanation that this was a simple mistake, Defendants instead extrapolate that, because Messrs. Burden and Edelstein had previously received the August 17, 2023 OSC Email stating that the transfers were "paid to Canada Revenue Agency (CRA), which is our equivalent of the IRS" (ECF No. 148–2), that the CFTC "knowingly submitted false information" to the Court. (ECF 172–1 at 23). While the CFTC disputes Defendants' characterization of its conduct, counsel recognizes that Your Honor has permitted Defendants to conduct discovery narrowly tailed to the issues related to Defendants' Motion, namely the OSC Email and related communications between the CFTC and OSC and the CFTC's disclosure of the misidentification of those transfers.

Ms. Streit was not a recipient of the OSC Email. As set forth in the CFTC's interrogatory responses, Ms. Streit first learned of the mistaken identification on September 26, 2023, when the Defendants identified it in a filing. As further set forth in the interrogatory responses, Ms. Streit did not learn of the OSC email until after it was re-discovered by Mr. Burden on November 16, 2023. Thereafter, Ms. Streit had conversations about the email with Mr. Burden, who will be present and available to testify on that subject to the extent that the conversations are discoverable and the Commission authorizes the limited waiver of applicable privileges.

Allowing Defendants to take Ms. Streit's testimony would expand the evidentiary hearing beyond the individuals involved in the misidentification described in Defendants' Motion and would vitiate any limiting principle on which witnesses' testimony might be relevant at a hearing. Defendants have not demonstrated a substantial need for Ms. Streit's testimony and the burden of producing a third witness to testify is not insignificant. Accordingly, the CFTC respectfully requests that Your Honor continue to reserve on the decision to have Ms. Streit appear at the evidentiary hearing. (*see* ECF No. 188 at 2).

May 31, 2024
Page 5

## 2.      Date Range for Document Review and Production

### a.      Statement of the Issue

The CFTC has agreed to search, review, log, and, to the extent such materials exist, produce non-privileged communications dated May 23, 2023 through December 1, 2023 responsive to the Requests. The CFTC has also agreed to search, review, log, and, to the extent such materials exist, produce non-privilege documents and communications identified in its response to Defendants' Interrogatories. Defendants believe a broader date range is necessary and appropriate.

### b.      Defendants' Position

The CFTC should be compelled to search, review, and produce documents and communications for a broader date range than what it proposes.[2] For purposes of its document review, the CFTC would impose as an artificial end date December 1, 2023—the date it disclosed that it knew the true nature of the $31.55 million wire transfers as of August 17, 2023. Defendants submit that the end date should be, for at least some custodians, May 16, 2024—the date the CFTC served its interrogatory responses.

It is Defendants' position that, after the CFTC disclosed the true nature of the $31.55 million wire transfers in a footnote on December 1, 2023 (ECF No. 148), staff in the CFTC's Division of Enforcement continued to investigate issues at the heart of Defendants' motion for sanctions. Indeed, the CFTC's Deputy Director of Enforcement, Robert Howell, sent Defendants an email on February 29, 2024, to notify defendants of certain remedial steps the CFTC had undertaken "to cure each of the alleged deficiencies set out in the proposed motion [for sanctions] and otherwise set[ ] out the facts for your understanding if no cure is necessary." (ECF No. 172-3.) Mr. Howell's email makes clear that (i) the CFTC continued to investigate facts relating to Defendants' sanctions motion and (ii) made a determination internally that certain remedial steps were necessary and appropriate. Defendants should be able to obtain discovery to understand what the CFTC learned from its fact investigation and how it arrived at the decision to take remedial steps, including the removal of the Chief Trial Attorney (Ms. Streit) and lead line attorney (Mr. Burden) from the case.

Separately, the CFTC's interrogatory responses indicate that the CFTC's investigation and deliberations with respect to the CFTC's various misrepresentations to the Court continued at least until the date the CFTC served its interrogatory responses. For example, in response to Defendants' second interrogatory, the CFTC disclosed for the first time that "Mr. Burden and Mr. Edelstein received or participated in communications with the OSC on the subject of [the $31.55 million wire] transfers on June 16, 2023." (Interrogatory Responses at 9.) This remarkable admission reveals that the CFTC Enforcement staff might have known the true nature of the wire transfers *two months earlier* than Defendants and the Court were aware. Thus, the June 16 email could show that even the CFTC's "corrective disclosure" on December 1, 2023, was false. Defendants should be permitted to obtain discovery to learn, among other things, when this fact was discovered, why it was not disclosed sooner, who made the determination to withhold the information, and whether

---

[2] To be clear, Defendants agree that the CFTC should begin by searching the period May 23, 2023, through December 1, 2023, and do not seek to further delay that review.

5

May 31, 2024
Page 6

other relevant (exculpatory) facts were discovered in connection with the CFTC preparing its interrogatory responses.

It is the Defendants' view that the CFTC continued to investigate the facts and, evidently, discover additional errors in the record, after December 1, 2024. As set forth in Defendants' motion for sanctions, the misconduct—and misrepresentations—at issue are not limited to the CAD $31.55 million transfer. To the contrary, since the inception of this case, the CFTC has materially misled the Court on at least ten occasions. Certain of these misleading or incorrect statements were made in the CFTC's opposition brief to Defendants' motion for sanctions, which was filed on March 18, 2024. Defendants' reply brief addresses these misleading statements. *See* ECF 180. Respectfully, Defendants must be permitted to probe the CFTC's ongoing investigation, findings, and evidence bearing on the CFTC's various misrepresentations to the Court, including its misstatements to the Court in its opposition brief to Defendants' sanctions motion.

Defendants remain willing to discuss appropriate search parameters with the CFTC. For example, it may be appropriate to extend the end date for some custodians through February 29, 2024, and separately search documents and communications collected from new custodians for the date range November 17, 2023, through May 16, 2024.

c.    **CFTC's Position**

The CFTC disputes Defendants' vague and unsupported assertions of claimed additional misconduct, and continues to object to Defendants' request to expand the scope of discovery (and testimony) well beyond the scope contemplated by Your Honor; namely issues pertaining to the OSC Email and the initial misidentification of the two transfers in the CFTC Investigator Declaration. (*See* ECF No. 192–4 at 7-8.) Discovery should be limited to the issues at hand: the CFTC's initial misidentification of the error and the receipt of the OSC Email and decision to disclose the email on December 1, 2023. It is concerning that Defendants now seek discovery nearly to the present moment, including discovery related to the CFTC's efforts to respond to the very motion at issue such as the CFTC's internal communications regarding its responses to Defendants' written sanctions discovery and internal communications during the "safe harbor" period. Defendants' proposal would greatly expand the scope of the evidentiary hearing, and again provides no limiting principle to prevent sanctions discovery from expanding indefinitely.

Further, Defendants' arguments about the June 16, 2023 OSC email are a red herring. The CFTC's interrogatory responses—and the OSC email disclosed to Defendants ant the Court six months ago—make clear that CFTC staff learned the CAD $31.5 million transfers were tax payments through the OSC email on August 17, 2023. In the interests of full disclosure, the CFTC also identified in its interrogatory responses a June 16, 2023 email regarding "the *potential* nature of the transfers at issue." As discussed above, the parties are discussing a potential a limited privilege waiver that would result in the production of that June 16 email, which would end Defendants' speculation about what information that earlier email might or might not contain. (CFTC counsel again notes that counsel cannot waive the privileges held by the Commission and thus, the Commission must consider and vote on whether to waive.)

May 31, 2024
Page 7

This Court should not sanction Defendant's continued failure to comply with the strict procedural requirements of Rule 11(c)(2). (*See* ECF No. 177 at 34-35.) To the extent Your Honor elects to entertains Defendants' request for additional discovery, the CFTC respectfully submits that Defendants should file a motion to compel detailing the specific areas of dispute and the relevancy and need for the additional discovery and providing legal authority to support their expansive requests.

**3.      Certain Requests for Production ("RFPs")**

While the parties appear to have reached agreement on a number of the RFPs, some remain in dispute. These include, for instance, Request No. 5 (relating to drafts of the Edelstein Declaration) and Request No. 11 (relating to the materiality of the statement that $31,550,000 was transferred to an unidentified Kazmi account). Defendants' position is that discovery on these topics is squarely within the scope of permitted discovery and that any otherwise-applicable privileges have been waived. The CFTC disagrees and, as to Request No. 11, seek clarity as to what Defendants' mean by materiality.

**4.      Scope of Testimony at Evidentiary Hearing**

**a.      Statement of the Issue**

Defendants seek to examine CFTC witnesses at the evidentiary hearing on what they view as misrepresentations to the Court made in the Commission's Complaint (ECF No. 1) and during the November 6, 2023 PI Hearing. The CFTC disputes Defendants' characterization of these statements and objects to Defendants' efforts to seek discovery and/or elicit testimony on subjects not raised in their Motion.

**b.      Defendants' Position**

The CFTC has misled the Court on at least ten occasions. One of the agency's misrepresentations—that $31.55 million was transferred from a BMO bank account held in the name of Traders Global Group to an "unidentified Kazmi Account" (ECF No. 23-44 ¶ 29)—is the principal basis for defendants' sanctions motion. Defendants' requests for production and interrogatories are narrowly focused on how that misrepresentation was included in the CFTC's application for an SRO, why it went uncorrected for months, and the agency's shifting explanations for its conduct. Defendants are *not* seeking broader document discovery.

However, consistent with the Special Master's allowance of discovery of documents and information within the range of "disputed fact[s] that [are] currently at issue in the sanctions motion." (ECF No. 192-4 at 41:2-41:3.), defendants *do* intend to question CFTC witnesses at the evidentiary hearing concerning *all* of the agency's misrepresentations throughout the course of this litigation. The CFTC has consistently mischaracterized evidence, concealed exculpatory facts, and provided evasive answers to the Court. It is critical that the Special Master hear testimony on the full extent of the CFTC's misrepresentations and omissions, because it is directly relevant to the witnesses' credibility, the state of mind and intent of relevant CFTC staff, and the absence of mistake and lack of accident. The CFTC's pattern of concealing and misrepresenting exculpatory evidence undercuts its claim that it made a one-off error in good faith as to the CAD $31,550,000 issue. As such, while defendants have heeded the Special Master's admonition to tailor the scope

May 31, 2024
Page 8

of document discovery to the $31,550,000 wire transfer, the Special Master should permit questioning at the evidentiary hearing about all of the CFTC's misrepresentations.

To that end, Defendants should be permitted to examine CFTC witnesses on the following topics: (i) the CFTC's failure to correct its misrepresentations relating to the $31.55 million wire transfer, and its continued reliance on those misrepresentations; (ii) the CFTC's allegation that it did not rely on false information about the wire transfers in seeking relief from the Court; (iii) Mr. Burden's representation that the CFTC would "stand on Mr. Edelstein's declaration for the PI Hearing" (ECF 172-5); (iv) Mr. Burden's misrepresentations to the Court during the PI Hearing relating to the $31.55 million wire transfer, including but not limited to Mr. Burden's representation that the wire transfer "was not material to the purpose of the declaration" (Nov. 6, 2023 Hr'g Tr. 52:1); (v) the CFTC's representation that the failure to correct the record was "an error in judgment" (ECF No. 177 at 1); (vi) the timing of the CFTC's disclosure of the OSC Email; the CFTC's misrepresentations or omissions relating to the substance of Matthew Chichester's testimony; (vii) evidentiary support for certain of the CFTC's allegations in the Complaint, including its assertions that My Forex Funds improperly applied slippage and delay, and (viii) that My Forex Funds acted as a "counterparty" to customers who accessed My Forex Funds' simulated trading platform.

All of these categories go to the credibility and state of mind of members of the CFTC staff and bear directly on the staff's good faith basis to file the *ex parte* application for a Statutory Restraining Order and the Complaint itself. More fundamentally, and in keeping with Defendants' motion for sanctions, testimony on these topics will reveal the CFTC's concerning pattern of knowing misrepresentations to the Court and the agency's failure to disclose or consider exculpatory evidence. Although Defendants do not seek documentary discovery on these topics, Defendants should nevertheless be permitted to take oral testimony on these critical issues.

c.    **CFTC's Position**

The CFTC vigorously disputes Defendants' assertions that CFTC, including undersigned counsel, have made misrepresentations, aside from the long acknowledged initial misidentification of the CAD $31.5 million transfers, and deny Defendants' suggestion that the CFTC has engaged in a "pattern of knowing misrepresentations to the Court." Defendants fail to provide any legal support for their request that Your Honor vastly expand the scope of the evidentiary hearing, including to allow Defendants to inquire as to the evidentiary support for allegations in the Complaint and counsel's related mental impressions and strategic decisions.

This request again highlights the ever-expanding scope of Defendants' requests with respect to the sanctions motion. Defendants' request to take testimony regarding supposed misrepresentations and omissions relating to the substance of Mr. Chichester's testimony, the evidentiary support for the allegations in the CFTC's complaint relating to slippage and delay, and the CFTC's allegations that Defendants acted as "counterparty" to customers are plainly outside the scope of the issues raised in the Rule 11 motion. These are issues that should be explored and resolved, if at all, after discovery at summary judgment or trial, not in a sanctions hearing conducted while discovery is at a nascent stage. Any evidentiary hearing should be limited to the issues raised in the Rule 11 Motion, period. Allowing a hearing on issues even broader than those

May 31, 2024
Page 9

raised by Defendants in their Motion would be wasteful and would cause the tail to wag the dog in this action.

The CFTC respectfully submits that, to the extent Your Honor even considers Defendants' request, the Parties should brief these issues.

**C.**     **Conclusion**

The Parties will be prepared to address the substance of this joint status report during the conference scheduled for Friday, May 31, 2024. The Parties stand ready to provide further briefing, to the extent it would be helpful for Your Honor in considering the issues herein.

*     *     *

Respectfully submitted,

 /s/ Craig Carpenito

Craig Carpenito

*King & Spalding*


 /s/ Elizabeth N. Pendleton

Elizabeth N. Pendleton

*One of the Attorneys for Plaintiff Commodity Futures Trading Commission*


cc:  All counsel of record (via ECF)