THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TRADERS GLOBAL GROUP, INC., et al.,<br><br>Defendants. | Case No. 23-11808 (ESK/EAP) |

# OPINION

This matter comes before the Court in connection with an *in camera* review of documents that Plaintiff Commodity Futures Trading Commission ("Plaintiff") seeks to produce in response to Defendants'[1] Request for Production No. 15. Having conducted the *in camera* review, the Court finds that documents 1-227 on Plaintiff's Privilege Log of *In Camera* Review Documents ("Privilege Log") are protected by the attorney work-product privilege; documents 189, 190, 191, 193, 194, 195, 217, and 219 on the Privilege Log are additionally protected by the attorney-client privilege; and that none of the documents is protected by the deliberative process privilege.

# BACKGROUND

On March 7, 2024, Defendants filed a Motion for Sanctions against Plaintiff, alleging that Plaintiff: (1) made false statements to the Court in its *ex parte* submissions for a statutory restraining order against Defendants; (2) repeatedly failed to correct the record after its misstatements were

---

[1] Defendants are Traders Global Group, Inc., a New Jersey Corporation, d/b/a "My Forex Funds"; Traders Global Group Inc., a Canadian business organization; and Murtuza Kazmi (hereinafter "Defendants").

revealed; and (3) knowingly offered misrepresentations to the Court during a November 6, 2023 preliminary injunction hearing. *See* ECF No. 172-1 (Defs.' Mem. of Law) at 6-11. Defendants also contend that Plaintiff's counsel "intentionally sought privileged information from Mr. Kazmi" during his deposition. *Id.* at 12-13.

On April 30, 2024, Special Master Jose L. Linares, U.S.D.J. (Ret.) ("Special Master") granted Defendants leave to serve requests for the production of documents and ten interrogatories "narrowly tailored to the issues" in the Motion for Sanctions. *See* ECF No. 188 (Order) at 1. Following Defendants' service of those discovery requests and Plaintiff's response, Defendants filed a motion to compel the production of documents, objecting in part to Plaintiff's response to RFP 15. *See* ECF No. 204 (Defs.' Motion to Compel) at 4-5. Plaintiff and Defendants subsequently agreed to enter into a Limited Privilege Waiver under which Plaintiff would disclose certain materials for the limited purpose of responding to discovery requests made in connection with Defendants' Motion for Sanctions and for use at any related evidentiary hearing. *See* ECF No. 212 (Protective Order). That protective order covered materials for the period of May 23, 2023, to December 1, 2023. *Id.* at 4 ¶ 2. Plaintiff, however, would not consent to extend the limited waiver to materials dated December 2, 2023, or later. *See id.*; *see also* ECF No. 226 (Defs.' Letter, dated Sept. 16, 2024) at 2.

On July 25, 2024, the Special Master held that the documents sought in RFP 15 were discoverable because they were likely to "lead to the discovery of admissible evidence on the underlying conduct." ECF No. 214 (Op. & Order) at 5-6. The Special Master noted, however, that "[t]o the extent responsive information includes, for example, 'privileged internal staffing issues' . . . [Plaintiff] retain[ed] the right to assert that privilege," and "Defendants retain[ed] the right to challenge any claims of privilege." *Id.* at 6.

On August 1, 2024, Plaintiff served a privilege log asserting that many of the documents responsive to RFP 15 were protected by the attorney-client privilege, work-product privilege, and/or the deliberative process privilege. *See* ECF No. 226 (Defs.' Letter, dated Sept. 16, 2024) at 2. Defendants objected that Plaintiff's privilege log was non-compliant with Federal Rule of Civil Procedure 26(b)(5)(A)(ii). *Id.* Specifically, Defendants contended that Plaintiff had refused to produce any materials responsive to RFP 15 dated December 2, 2023, or later and claimed "blanket privilege protection over dozens of documents." *Id.*

Concerned that Plaintiff's privilege designations were unwarranted and improper, Defendants proposed that the parties agree to submit the documents to the Special Master for *in camera* review to assess the claims of privilege. *Id.* at 2-3. When Plaintiff refused, Defendants asked the Special Master to order Plaintiff to produce the documents and undertake the *in camera* review. *See* ECF No. 217 (Defs.' Letter, dated Aug. 16, 2024) at 1. Plaintiff objected, asserting that *in camera* review may have a "chilling effect" on government enforcement attorneys. ECF No. 218 (Pl.'s Letter) at 5. To address the parties' individual concerns and following the parties' exchange of multiple additional letters on the issue, *see* ECF Nos. 222, 223, 224, the Special Master ordered that an *in camera* review was appropriate but to avoid the "chilling effect," the undersigned would assume the review.

The Court has completed its review of the 227 documents identified on the Privilege Log. This Opinion summarizes the Court's findings as to the privileged nature of those documents.

## DISCUSSION

The parties requested review of the documents for the applicability of three privileges: (1) the deliberative process privilege; (2) the work-product privilege; and (3) the attorney-client privilege. Defendants have also asked the Court to consider whether any exception to an extant privilege applies; "that is, whether the interests of justice require that evidence of the government's

3

misconduct and its failure to timely or adequately remediate be disclosed." ECF No. 226 (Defs.' Letter, dated Sept. 16, 2024) at 4.

All evidentiary privileges asserted in federal court are governed by Federal Rule of Evidence 501, which provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> - The United States Constitution;
>
> - A federal statute; or
>
> - Rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which the state law supplies the rule of decision.

Fed. R. Evid. 501. Where, as here, the action involves federal claims, federal common law controls. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000).

"The deliberative process privilege permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Redland Soccer Club, Inc. v. Dep't of the Army of the U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (quotations omitted). "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). To assert the deliberative process privilege, a party must meet the following requirements:

> (1) the head of the department which has control over the matter must make a formal claim of privilege after actually considering the matter; (2) the responsible agency official must provide precise and certain reasons for asserting the privilege over the government information or documents at issue; and (3) the government information or documents sought to be shielded from disclosure must be identified and described.

*Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207, 211 (D.N.J. 2014) (citing *United States v. Ernstoff*, 183 F.R.D. 148, 152 (D.N.J. 1998)). "To be deliberative, a document must reflect 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Id.* (quoting *N.L.R.B.*, 421 U.S. at 151-52).

The work-product privilege "provides an independent ground upon which litigants may rely for protection of attorney materials" prepared in preparation for litigation. *Maldonado v. N.J. ex rel. Admin. Office of Courts-Probation Div.*, 225 F.R.D. 120, 130-31 (D.N.J. 2004) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). Federal Rule of Civil Procedure 26(b)(3) governs this privilege, which provides in part that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." Fed. R. Civ. P. 26(b)(3); *see also In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (extending the work-product privilege "to include materials prepared by an attorney's agents and consultants"); *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d Cir. 1979) (holding that work-product doctrine covered interview memoranda prepared by corporation and its attorneys during an internal investigation of various transactions). Because the work-product doctrine serves to "promote[] the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients" and "to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine." *Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). "The burden of establishing whether a particular document is protected as work product falls on the party asserting the protection." *Gen. Motors LLC v. Ashton*, No. 20-12659, 2022 WL

5

16817711, at *2 (D.N.J. Nov. 7, 2022) (citing *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008)).

Nonetheless, this doctrine is not absolute. *United States v. Nobles*, 422 U.S. 225, 239 (1975); *In re Grand Jury Matter #3*, 847 F.3d 157, 165 (3d Cir. 2017). The work-product doctrine may be waived by disclosure to an opposing party or adversary. *See Maldonado*, 225 F.R.D. at 132 ("The essential question with respect to waiver of the work-product privilege by disclosure is whether the material has been kept away from adversaries." (citation omitted)). Additionally, under the crime-fraud exception, a party seeking to obviate the work-product privilege "must demonstrate that there is 'a reasonable basis to suspect (1) that the [lawyer or client] was committing or intending to commit a crime or fraud, and (2) that the . . . attorney work product was used in furtherance of that alleged crime or fraud.'" *Grand Jury Matter #3*, 847 F.3d at 165 (alteration in original) (quoting *In re Grand Jury*, 705 F.3d 133, 155 (3d Cir. 2012)). "The burden of establishing waiver of the work-product doctrine falls . . . on the party seeking to establish waiver." *La. Mun. Police Emps. Ret. Sys.*, 253 F.R.D. at 311 (citing *Maldonado*, 225 F.R.D. at 132).

As to the third privilege at issue, the elements of the attorney-client privilege include:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Maldonado*, 225 F.R.D. at 127 (quoting *In re Grand Jury Investigation*, 599 F.2d at 1233); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 117 (D.N.J. 2002) (same). The party

claiming the privilege bears the burden of demonstrating its applicability. *Poe v. Driver Hist. Sales Corp.*, No. 20-14586, 2022 WL 2235880, at *2 (D.N.J. June 22, 2022) (citation omitted).

Turning first to the application of the deliberative process privilege, the Court finds that the privilege does not apply to any of the documents subject to *in camera* review. As noted above, the deliberative process privilege shields documents that "reflect 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Del. Riverkeeper*, 300 F.R.D. at 211 (D.N.J. 2014) (quotation omitted). The documents reviewed here involve discussions among counsel about how to address Defendants' potential motion for sanctions. Nothing in those discussions reflects deliberations or advisory opinions about the Commodity Futures Trading Commission's policies or decisions.

With respect to the work-product privilege, the Court concludes that all of the documents subject to *in camera* review—listed as 1 to 227 on the Privilege Log—are protected by this doctrine. The communications set forth in these documents all took place between Plaintiff's in-house lawyers at varying levels of seniority. The discussions focused almost exclusively on how best to address certain legal issues occurring in the course of the present litigation and memorialized the attorneys' mental processes. These documents were created primarily for the purpose of litigation—*i.e.*, response and resolution of a proposed sanctions motions—and not in the ordinary course of business. Nothing in the documents suggests that the material has been disclosed to any adversaries, such that waiver occurred. Moreover, upon thorough review of the various emails, the Court finds no reasonable basis to suspect that the attorneys were committing or intending commit any crime or fraud.

Finally, as to the attorney-client privilege, the Court finds that documents 189, 190, 191, 193, 194, 195, 217, and 219 on the Privilege Log consist of email communications involving an attorney from the Office of General Counsel ("OGC") and therefore, are protected attorney-client

7

communications.  "The Office of the General Counsel serves as the chief legal advisor to the Commission . . . [and] provides comprehensive, high quality legal services and resources to the CFTC and its staff to enable the agency to fulfill its mission." https://www.cftc.gov/About/CFTCOrganization/OGC (last visited Oct. 18, 2024), available at https://perma.cc/9U6B-2V9B.  As such, the OGC effectively functions as the outside attorney to the in-house counsel for the Commodity Futures Trading Commission.  The communications all relate to the Commodity Futures Trading Commission's efforts to secure a legal opinion regarding the potential motion for sanctions.  These communications were not for the purposes of committing a crime or tort and have not been waived by disclosure to a third party.

## CONCLUSION

In light of the foregoing, the Court finds as follows:  (1) all of the documents listed on the Privilege Log are covered by the work-product privilege; and (2) documents 189, 190, 191, 193, 194, 195, 217, and 219 listed on the Privilege Log also are also covered by the attorney-client privilege.  The deliberative process privilege does not apply to any of the documents identified on the Privilege Log.

s/ Elizabeth A. Pascal  
ELIZABETH A. PASCAL  
United States Magistrate Judge

Date:  October 21, 2024

cc:   Edward S. Kiel, U.S.D.J.
      Jose L. Linares, U.S.D.J. (Ret.)